DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
BY:    LISA P. KOROLOGOS
26 Federal Plaza
New York, New York 10278
Tel. (212) 637-2406

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,

     Plaintiff,

    - v. -

$149,990 IN UNITED STATES CURRENCY,

     Defendant-*in-rem*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                 VERIFIED COMPLAINT
                 FOR FORFEITURE

                 24 Civ.

Plaintiff United States of America, by its attorney Damian Williams, United States

Attorney for the Southern District of New York, for its verified complaint, alleges as follows:

## JURISDICTION AND VENUE

  1.  This action is brought pursuant to 18 U.S.C. § 981 and 21 U.S.C. § 881 by

the United States of America seeking the forfeiture of $149,990.00 in United States Currency (the

"Defendant-*in-rem*").

  2.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355.  Venue

is proper under 28 U.S.C. § 1355(b)(1)(A) because the actions and omissions giving rise to

forfeiture took place in the Southern District of New York, and pursuant to 28 U.S.C. § 1395

because the Defendant-*in-rem* was found and seized in the Southern District of New York.

  3.  The Defendant-*in-rem* is presently in the United States Marshal Service's

Seized Asset Deposit Fund in the Southern District of New York.

BACKGROUND

4.      On November 21, 2002 the Government filed a civil forfeiture action, 02 Civ. 9318 (DLC) (the "first civil forfeiture action") in this district against the Defendant-*in-rem*. The complaint, amended on February 27, 2003 (the "2003 Complaint"), was supported by the same operative facts and the same forfeiture claims -- forfeiture of narcotics proceeds pursuant to 21 U.S.C. § 881(a)(6) and forfeiture of money laundering proceeds pursuant to 18 U.S.C. § 981(a)(1)(A) -- as those asserted below in support of the instant forfeiture claims.

5.      On January 3, 2003, Gisardo Martinez ("Martinez"), the co-conspirator who, along with co-conspirator Juan Serulle ("Serulle"), committed the offenses supporting the forfeiture claims asserted in the 2003 Complaint, filed a claim for the Defendant-*in-rem* alleging that he was the owner of the Defendant-*in-rem*.  Serulle did not file a claim.

6.      On September 24, 2003, while the first civil forfeiture action was still pending, Martinez and Serulle were arrested in a parallel criminal proceeding (the "parallel criminal case") for, *inter alia*, committing the same offenses alleged against them in the 2003 Complaint.

7.      On October 7, 2003, in the parallel criminal case, Martinez and Serulle were charged in a one count Indictment, 03 Cr. 1195 (JGK) (the "Indictment"), with money laundering conspiracy, in violation of 18 U.S.C. § 1956(h).  The Indictment included a forfeiture allegation seeking $753,515 in United States currency as property involved in, or traceable to, the money laundering offense. The $753,515 figure was an aggregate sum of the value of property involved in, or traceable to, three separate incidents comprising, in part, the money laundering conspiracy.   The Defendant-*in-rem* is property involved in, or traceable to, only one of those

2

incidents.

8.      On November 13, 2003, Martinez was released from incarceration on a $250,000 personal recognizance bond.

9.      On January 13, 2004, the first civil forfeiture action was discontinued because the Government was seeking forfeiture of the Defendant-*in-rem* through the parallel criminal case against Martinez.

10.     On December 14, 2005, Serulle pled guilty to the one count Indictment.

11.     On or about March 9, 2005, Martinez failed to appear in the criminal case against him and the court ordered a sealed bench warrant for his arrest. On February 22, 2010, the court unsealed the warrant in order to enable the Government to file copies of it with various law enforcement fugitive data bases.

12.     To date, Martinez remains a fugitive.

<u>THE MONEY LAUNDERING CONSPIRACY</u>

13.     As set forth in the Indictment, beginning in or about May 2002, money laundering brokers in Colombia arranged through various middlemen in Colombia and/or the United States to transfer illegal narcotics proceeds held in the New York area in order to launder the proceeds. The brokers exchanged contact information regarding the individuals in New York actually holding the proceeds on behalf of the narcotics traffickers with the middlemen, in order to facilitate contact between the individuals in the New York area who actually carried out the transfers of the funds. The middlemen in turn provided the information to the individuals who ultimately picked up the narcotics proceeds from the New York money holders on behalf of the middlemen. Once the proceeds were in the hands of the middlemen, the brokers would then provide

3

the middlemen with instructions for the ultimate transfer of the funds. Martinez and Serulle participated in the conspiracy by, among other things, delivering funds constituting illegal narcotics proceeds to another individual in the New York area for the purpose of laundering the funds. Unbeknownst to Martinez and Serulle, the individual with whom they met and to whom they delivered the narcotics proceeds was an undercover officer posing as an individual who could launder narcotics proceeds.

14.     For example, in furtherance of the conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a.     On or about May 29, 2002, Martinez spoke to an undercover officer (the "UC") in New York, New York regarding the delivery of a sum of narcotics proceeds.

    b.     On or about May 30, 2002, Martinez and Serulle delivered approximately $388,530 in narcotics proceeds to the UC in the vicinity of 96th Street and Broadway, New York, New York.

    c.     On or about June 5, 2002, Martinez and Serulle delivered approximately $214,995 in narcotics proceeds to the UC in the vicinity of 96th Street and Broadway, New York, New York.

    d.     On or about June 12, 2002, Martinez and Serulle possessed approximately $149,990 in narcotics proceeds in the vicinity of 135th Street and Broadway, New York, New York.

## FACTUAL ALLEGATIONS

15.     In or about June 2002, Juan Serulle was identified as one of the members

4

of the illegal narcotics trafficking and money laundering organization.  As part of the investigation, law enforcement agents conducted surveillance on Serulle.

16.     During the first two surveillances, Serulle was observed driving a gray Dodge van registered to Jaime Francisco Rodriquez in Grand Rapids, Michigan, with Michigan license plates bearing the name "Serulle" (the "Dodge van").   Serulle was observed driving the Dodge van around the vicinity of northern Manhattan, making frequent stops and meeting with numerous individuals in a manner consistent with individuals involved in illegal narcotics trafficking and money laundering.

17.     On or about June 11, 2002, according to a confidential source, members of the organization possessed narcotics proceeds that they wanted to launder.

18.     On or about June 12, 2002, at approximately 11:00 a.m., law enforcement agents proceeded to an address in the vicinity of West 135th Street in Bronx, New York, where they believed that Serulle was living.

19.     On or about June 12, 2002, at approximately 1:00 p.m., Serulle entered the Dodge van and then drove to the vicinity of Dyckman Street and Nagle Avenue.

20.      Over the course of approximately one hour, the Dodge van made a number of stops and several subjects entered and left the Dodge van in the area of Nagle Avenue and 207th Street.

21.      At one point, Serulle exited the Dodge van in front of 192 Nagle Avenue and spoke to a woman located at the window in a first floor apartment. The woman handed Serulle a plastic bag. Serulle then re-entered the Dodge van and drove away.

22.     At approximately 2:00 p.m., Serulle parked the Dodge van in the vicinity of 140 Seaman Avenue in northern Manhattan.   Serulle spoke to a number of individuals and then

5

drove away.

23.     At approximately 2:30 p.m., the Dodge van proceeded to the area of 204th Street and the Grand Concourse. Gisardo Martinez exited the Dodge van from the front passenger door.   A few minutes later, Martinez re-entered the Dodge van.

24.     At approximately 3:00 p.m., the Dodge van began to utilize numerous counter surveillance techniques.

25.     At approximately 3:30 p.m., a traffic stop was conducted on the Dodge van at 606 135th Street in northern Manhattan.

26.     During the traffic stop, Serulle was in the driver's seat and Martinez was in the front passenger seat in the Dodge van.

27.     Serulle consented to the search of the Dodge van.

28.     Upon searching the Dodge van, law enforcement agents found a red bag in the rear of the Dodge van.

29.     The bag contained a large amount of United States currency, which was bundled together with rubber bands and appeared to contain a large number of $20 bills in the bundles.

30.     When questioned by law enforcement agents about the currency in the bag, Serulle and Martinez both stated that they did not know anything about the red bag and that the currency in the bag did not belong to them.

31.     The currency in the bag was seized and was later determined to contain $149,990.00 in United States currency, i.e., the Defendant-*in-rem*.

32.     Serulle and Martinez were arrested and charged with money laundering conspiracy.

FIRST CLAIM FOR FORFEITURE

33.     Incorporated herein are the allegations contained in paragraphs one through three and thirteen through thirty-two of this Verified Civil Complaint.

34.     Pursuant to 21 U.S.C. § 881(a)(6), all moneys furnished or intended to be furnished in exchange for a controlled substance, all proceeds traceable to such exchanges, and all moneys used or intended to be used to facilitate such exchanges, in violation of Title 21 of the United States Code, are subject to seizure and forfeiture to the United States, and no property right exists in such proceeds.

35.     The Defendant-*in-rem* is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes moneys intended to be furnished in exchange for a controlled substance, and/or proceeds traceable to such exchanges, and/or moneys used or intended to be used to facilitate such exchanges, in violation of Title 21 of the United States Code.

36.     By reason of the above, the Defendant-*in-rem* became, and is, subject to forfeiture to the United States of America, pursuant to 21 U.S.C. § 881(a)(6).

SECOND CLAIM FOR FORFEITURE

37.     Incorporated herein are the allegations contained in paragraphs one through three and thirteen through thirty-six of this Verified Civil Complaint.

38.     18 U.S.C. § 981(a)(1)(A) subjects to forfeiture "(a)ny property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of [Title 18], or any property traceable to such property."

39.     18 U.S.C. § 1956(a), commonly known as the "money laundering" statute,

imposes a criminal penalty upon

"(a)(1) [w]hoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity -- (A)(i) with the intent to promote the carrying on of specified unlawful activity; or (ii) with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or (B) knowing that the transaction is designed in whole or in part -- (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or (ii) to avoid a transaction reporting requirement under State or Federal law."

40.    "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense listed under 18 U.S.C. § 1961(1).  Section 1961(1)(D) lists as an offense, "the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States."

41.    By reason of the above, the Defendant-*in-rem* is subject to forfeiture to the United States of America pursuant to 18 U.S.C. § 981(a)(1)(A) as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 or constitutes property traceable to such  property.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, plaintiff United States of America prays that process issue to enforce the forfeiture of the Defendant-*in-rem* currency and that all persons having an interest in the Defendant-*in-rem* be cited to appear and show cause why the forfeiture should not be decreed, and that this Court decree forfeiture of the Defendant-*in-rem* to the United States of America for disposition according to law, and that this Court grant plaintiff such further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated:  New York, New York
      March _8_ 2024

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

*Lisa P Korologos*

By:_____
LISA P. KOROLOGOS
Assistant United States Attorney
26 Federal Plaza
New York, New York 10278
Telephone: (212) 637-2406

9

<u>DECLARATION OF VERIFICATION</u>

Brian DeJoy, pursuant to Title 28, United States Code, Section 1746, hereby declares under penalty of perjury that he is a Special Agent with the United States Drug Enforcement Administration; that he has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to the best of his knowledge, information and belief; and that the sources of his information and the grounds of his belief are his personal involvement in the investigation, and conversations with and documents prepared by law enforcement officers and others.

Executed on February 23, 2024

Brian DeJoy
Special Agent
U.S. Drug Enforcement Administration

10